**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **JON McKINLEY**<br>9666 Independence Boulevard<br>Parma Heights, OH 44130<br><br>and<br><br>**NICOLE McKINLEY**<br>9666 Independence Boulevard<br>Parma Heights, OH 44130<br><br>Plaintiffs,<br><br>v.<br><br>**LOANDEPOT.COM, LLC d.b.a.**<br>**LOANDEPOT**<br>c/o Registered Agent Solutions, Inc.<br>4568 Mayfield Road, Suite 204<br>Cleveland, OH 44121<br><br>and<br><br>**NATIONSTAR MORTGAGE LLC d.b.a.**<br>**MR. COOPER**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>Defendants. | Case No.<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jon McKinley and Nicole McKinley, through counsel, state as follows for their complaint against Defendants loandepot.com, LLC d.b.a. loanDepot and Nationstar Mortgage LLC d.b.a. Mr. Cooper:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Jon McKinley ("Mr. McKinley") and Nicole McKinley ("Mrs. McKinley") (collectively "Plaintiffs" or the "McKinleys") own a two-family residence located at and commonly known as 9666-9668 Independence Boulevard, Parma Heights, OH 44130 (the "Property").

2.      Plaintiffs maintain the portion of the Property located at and commonly known as as 9666 Independence Boulevard, Parma Heights, OH 44130 (the "Home") as their primary, principal residence and have done so for all times relevant to this matter.

3.      In order to refinance a pre-existing mortgage loan on the Property, on or about July 10, 2017, Plaintiffs borrowed money and executed a note in the amount of $165,486.00 payable to Defendant loandepot.com, LLC d.b.a. loanDepot ("loanDepot") (the "Note") and granted a contemporaneous mortgage on the Home to loanDepot (the "Mortgage") to secure payment of the Note (collectively, the "Loan").  *A copy of the Loan documents is attached as* ***Exhibit 1****.*

4.      loanDepot is the original creditor of the Loan and serviced the Loan from July 10, 2017 through December 4, 2018. *A copy of the Notice of Servicing Transfer correspondence from Mr. Cooper is attached as* ***Exhibit 2****.*

5.      Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper ("Mr. Cooper") is the present owner of and investor for the Loan and has serviced the Loan since December 4, 2018. *See Exhibit 2*.

6.      Jurisdiction over the claims against loanDepot and Mr. Cooper (collectively "Defendants") is conferred by 28 U.S.C.  § 1331 as this action arises primarily under the

Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

7.     This action is brought to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36 of Regulation X, as well as the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (FCRA).

8.     This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## SUMMARY OF CLAIMS

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) Mortgage Servicing Final Rules,  78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

12.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 3

13.     Defendants are each subject to Regulation X and neither qualifies for an exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as defined in 12 C.F.R. § 617.700.

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).[1]

15.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

16.     Congress enacted the FCRA, to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." 78 Fed. Reg. 10696, 10739.

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 4

17.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harm that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

18.     Plaintiffs bring this action to challenge the actions of Defendants with regard to erroneously reporting derogatory credit information, specifically, that Defendants breached the Loan which triggered the erroneously reported derogatory credit information.

19.     Plaintiffs assert claims for relief against each of the Defendants for violations of the specific rules set forth in RESP and Regulation X, and additionally against Mr. Cooper for violations of the FCRA, and the Electronic Funds Transfers Act, 15 U.S.C. § 1693 ("EFTA"), as set forth *infra*.

20.     Plaintiffs assert a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

21.     Plaintiffs also assert a common law claims for breach of contract, unjust enrichment, and conversion.

## STATEMENT OF FACTS

### (Mr. Cooper wrongfully claims the Loan to be delinquent)

22.     On or about November 19, 2018, loanDepot accepted and applied funds from Plaintiffs in satisfaction of amounts due for the mortgage payment due and owing for the month

of December 2018. *A copy of the transaction history for the Loan for the time during which loanDepot serviced the Loan is attached as **Exhibit 3**.*

23.     On or about December 10, 2018, the Borrowers remitted payment in the amount of $1,254.92 to loanDepot for the payment due January 1, 2018.

24.     On or about December 10, 2018, Plaintiffs remitted a payment in the amount of $1,254.52 to loanDepot from their account with The Huntington National Bank ("Huntington") through the transaction assigned confirmation number 1812100100534163 (the "December 2018 Payment"). *A copy of a screenshot from Huntington's online banking portal evidencing such payment from Plaintiffs' bank account is attached as **Exhibit 4**.*

25.     Pursuant to Plaintiffs' bank statements and records for the Huntington account, the funds for the December 2018 Payment were removed from the Plaintiffs' Huntington account on December 10, 2018.

26.     Pursuant to Plaintiffs' bank statements and records for the Huntington account, the funds for the December 2018 Payment were not returned to Plaintiffs or Plaintiffs' Huntington account at any time on or since December 10, 2018.

27.     On or about December 12, 2018, Mr. Cooper sent correspondence to Plaintiffs stating that servicing of the Loan was being transferred from loanDepot to Mr. Cooper effective December 4, 2018  (the "Notice"). *See Exhibit 2*.

28.     According to the record of posted payments for the Loan, accessed from Mr. Cooper's website on or about June 5, 2019 (the "Website Record"), it appears that loanDepot attempted to forward the Borrowers' payment to Mr. Cooper on or about December 18, 2018. *A copy of the Website Record is attached as **Exhibit 5**.*

29.     Pursuant to the Website Record, Mr. Cooper appears to have initially posted this payment properly, but then reversed the payment, charged fees in the amount of $50.00, then applied $614.92 towards the principal of the Loan leaving the unpaid principal balance of the Loan at $160,788.26. *See Exhibit 5.*

30.     Confusingly, none of these transactions from December 4, 2018 through December 18, 2018 appeared on the periodic billing statement Mr. Cooper created and mailed to Plaintiffs on or about December 21, 2018 which claimed no transactions occurred between such dates and stated the unpaid principal balance of the Loan was $161,403.18.  *A copy of the mortgage statements Plaintiffs received from Mr. Cooper for the months of December 2018 through May 2019 is attached as* ***Exhibit 6***.

31.     The periodic billing statement Mr. Cooper created and sent to Plaintiffs dated January 2, 2019 stated that the December 2018 Payment was received and applied on or about December 18, 2018 and that the unpaid principal balance of the Loan was $161,141.17. *See Exhibit 6.*

32.     On or about February 1, 2019, Plaintiffs remitted funds to Mr. Cooper in the amount of $1,254.92, an amount sufficient to cover the amounts due and owing on the Loan for February 1, 2019 (the "February 2019 Payment"). *See Exhibit 5.*

33.     The periodic billing statement Mr. Cooper created and sent to Plaintiffs dated February 19, 2019 finally mirrored the Website Record and stated, in part, that:

    a.   The Loan was one (1) month past due;

b. The amount due on the Loan for the payment due March 1, 2019, was $2,509.84 which represented the monthly payment due for both February 1, 2019 and March 1, 2019;

c. Mr. Cooper reversed the December 2018 Payment for insufficient funds on or effective December 18, 2018;

d. Mr. Cooper imposed a $50.00 fee for insufficient funds against Plaintiffs and the Loan on or effective December 18, 2018;

e. Mr. Cooper used funds from Plaintiffs to pay for the insufficient funds fee on or effective December 18, 2018;

f. Mr. Cooper applied $614.92 to the principal of the Loan on or effective December 18, 2018;

g. Mr. Cooper imposed and waived two (2) late fees, each in the amount of $30.66, on January 17, 2019 and February 19, 2019, respectively; and,

h. The unpaid principal balance of the Loan was $160,524.33.

*See Exhibit 6.*

34. At no point in time between December 10, 2018 through February 19, 2019, were there insufficient funds in Plaintiffs' Huntington Account to cover the amounts for the December 2018 Payment as the balance of such account remained above $5,000.00 during such time which would be sufficient to cover the amount of the December 2018 Payment multiple times over.

35. Despite Mr. Cooper claiming to have "reversed" the December 2018 payment, such funds were removed from Plaintiffs' Huntington account and were never returned to such account or otherwise credited or returned to Plaintiffs.

36.     Mr. Cooper has not accounted for or stated where the balance of funds from the December 2018 Payment, that is the funds remitted by Plaintiffs minus the $614.92 applied to principal and the $50.00 paid for the insufficient funds fee, went, but it was not ever returned to Plaintiffs.

37.     Rather than properly apply the February 2019 Payment to the Loan for the payment due and owing for February 1, 2019, Mr. Cooper applied the February 2019 Payment to the payment claimed to be due and owing for January 1, 2019. *See Exhibits 5 and 6.*

38.     Beginning in or around February 2019, Mr. Cooper wrongly, consistently, and continuingly began to claim that Plaintiffs were at least one (1) month delinquent on their obligations under the Loan and began imposing monthly late fees in the amount of $30.66 each. *See Exhibit 6.*

39.     At all times relevant, the Borrower timely remitted payments in an amount sufficient to satisfy all payments due and owing on the Loan, including but not limited to the following payments and similarly continuing beyond for the payments coming due and owing June 1, 2019 and thereafter:

    a.   Payment on February 1, 2019, in the amount of $1,254.92 in satisfaction of the payment due February 1, 2019;

    b.   Payment on March 1, 2019, in the amount of $1,254.92 in satisfaction of the payment due March 1, 2019;

    c.   Payment on April 1, 2019, in the amount of $1,254.92 in satisfaction of the payment due April 1, 2019; and,

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 9

d.  Payment on May 1, 2019, in the amount of $1,316.49 in satisfaction of the payment due May 1, 2019.

*See Exhibits 5 and 6.*

40.  On or about April 26, 2019, Plaintiffs were notified through their credit monitoring service that Mr. Cooper had been reporting them as delinquent on their obligations on the Loan to Credit Reporting Agencies (CRAs) including Experian PLC ("Experian"). *A screenshot of the notice received stating that the Loan appeared as a delinquent account on Plaintiffs' credit report with Experian is attached as **Exhibit 7**.*

41.  Plaintiffs filed a dispute with Experian contesting the allegations that they were delinquent on the Loan and seeking to have their credit report corrected accordingly (the "Experian Dispute").

42.  On or about May 21, 2019, Experian sent a notice to Plaintiffs regarding the Dispute stating that "[t]he company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute." *A copy of the results from Experian regarding the Dispute is attached as **Exhibit 8**.*

43.  Prior to sending the dispute to Experian Plaintiff Jon McKinley also sent a similar dispute to Exhibit 7 to TU.  While Plaintiff Jon McKinley did not receive a substantive response from TU from this dispute he did receive notification on April 30, 2019 that his TU Report had been updated. *A copy of the April 30, 2019 TU Credit Report is attached as **Exhibit 23**.*

44.  In reviewing Exhibit 23 Plaintiff Jon McKinley was disappointed to see that Mr. Cooper had once again reported incorrect information related to the March 2019 payment as Mr. Cooper noted that payment as "30 days past due". *Id.* at p. 3

45. As Mr. Cooper continued to improperly and wrongfully claim the Loan to be delinquent, Plaintiffs sought the assistance of and retained counsel to assist in having Defendants' correct their errors in relation to the Loan.

**(Unsuccessful attempts to obtain information from loanDepot and have loanDepot correct the errors committed in relation to the Loan)**

46. Plaintiffs, through counsel, sent correspondence dated May 30, 2019, classified as a request for information pursuant to 12 C.F.R. § 1024.36, and captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36", to loanDepot at one of the addresses designated by loanDepot for the receipt of notices of error and requests for information pursuant to 12 C.F.R. §§ 1024.35(c) and 1024.36(b), respectively (the "loanDepot Address")[2,3] via Certified U.S. Mail, Tracking No. 70142120000306726405 (the "loanDepot RFI"). *A copy of the loanDepot RFI is attached as **Exhibit 9***.

47. Plaintiffs, through counsel, sent correspondence dated June 11, 2019, classified as a notice of error pursuant to 12 C.F.R. § 1024.35, and captioned "Notice of error pursuant to 12 C.F.R. § 1024..35(b)(11) for failing to properly forward the Borrowers' December 10, 2018

---

[2] "A servicer may designate multiple office addresses for receiving notices of errors. However, a servicer is required to comply with the requirements of § 1024.35 with respect to a notice of error received at any such designated address regardless of whether that specific address was provided to a specific borrower asserting an error. For example, a servicer may designate an address to receive notices of error for borrowers located in California and a separate address to receive notices of errors for borrowers located in Texas. If a borrower located in California asserts an error through the address used by the servicer for borrowers located in Texas, the servicer is still considered to have received a notice of error and must comply with the requirements of § 1024.35." Supplement I to Part 1024 – Official Bureau Interpretation of Paragraph 35(c).

[3] "A servicer may designate multiple office addresses for receiving information requests. However, a servicer is required to comply with the requirements of § 1024.36 with respect to an information request received at any such address regardless of whether that specific address was provided to a specific borrower requesting information. For example, a servicer may designate an address to receive information requests for borrowers located in California and a separate address to receive information requests for borrowers located in Texas. If a borrower located in California requests information through the address used by the servicer for borrowers located in Texas, the servicer is still considered to have received an information request and must comply with the requirements of § 1024.36."Supplement I to Part 1024 – Official Bureau Interpretation of Paragraph 36(b).

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 11

payment to Mr. Cooper", to loanDepot at the loanDepot Address via Certified U.S. Mail, Tracking No. 70142120000306730198 ("loanDepot NOE #1"). *A copy of loanDepot NOE #1 is attached as **Exhibit 10**.*

48.     Through loanDepotNOE #1, Plaintiffs asserted that loanDepot committed an error regarding the Loan pursuant to 12 C.F.R. §1024.35(b)(11) for failing to properly account for and forward the December 2018 Payment to Mr. Cooper as required by law. *See Exhibit 10.*

49.     loanDepot received the loanDepot RFI and loanDepot NOE #1 at the loanDepot Address on June 24, 2019. *A copy of the tracking information for the loanDepot RFI from the website for the United States Postal Service (USPS) (www.usps.com) is attached as **Exhibit 11**; a copy of the tracking information for loanDepot NOE #1 from the USPS's website (www.usps.com) is attached as **Exhibit 12**.*

50.     loanDepot failed to send any written notice to the Borrowers or their counsel consisting of an acknowledgment or response to either the loanDepot RFI or loanDepot NOE #1 at any time and otherwise failed to provide any information sought by Plaintiffs or to investigate the alleged errors.

51.     As loanDepot failed to provide any response to the loanDepot RFI or loanDepot NOE #1, Plaintiff subsequently sent correspondence on or about August 27, 2019 captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information as required by 12 C.F.R. § 1024.36(d); notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for failing to respond to a notice of error as required by 12 C.F.R. § 1024.35" to loanDepot at the loanDepot Address via Certified U.S. Mail [Tracking No. 70151520000166374097] alleging that loanDepot committed two (2) errors in relation to the

Loan, one such error for loanDepot's failure to respond to the loanDepot RFI and one such error for loanDepot's failure to respond to loanDepot NOE #1 ("loanDepot NOE #2"). *A copy of loanDepot NOE #2 is attached as* **Exhibit 13**.

**(Unsuccessful attempts to obtain information from Mr. Cooper and to have Mr. Cooper correct the errors committed in relation to the Loan)**

52.     Plaintiffs, through counsel, sent correspondence dated May 30, 2019, classified as a request for information pursuant to 12 C.F.R. § 1024.36. and captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)", to Mr. Cooper at the addresses designated by Mr. Cooper for the receipt of notices of error and requests for information pursuant to 12 C.F.R. §§ 1024.35(c) and 1024.36(b), respectively (the "Mr. Cooper Address") via Certified U.S. Mail, Tracking No. 70142120000306726412 (the "Mr. Cooper RFI"). *A copy of the Mr. Cooper RFI is attached as* **Exhibit 14**.

53.     Mr. Cooper received the Mr. Cooper RFI on June 4, 2019. *A copy of the tracking information for the Mr. Cooper RFI from the USPS's website (www.usps.com) is attached as* **Exhibit 15**.

54.     Plaintiffs, through counsel, sent correspondence dated June 11, 2019, classified as a notice of error pursuant to 12 C.F.R. § 1024.35, and captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(2) for failing to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law; notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposing fees for which a servicer had no reasonable basis to impose; notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to withdraw funds as authorized and directed through the servicer's autopay feature", to Mr. Cooper at the Mr. Cooper

Address via Certified U.S. Mail, Tracking No. 70142120000306730181 ("Mr. Cooper NOE #1"). *A copy of Mr. Cooper NOE #1 is attached as **Exhibit 16**.*

55. Mr. Cooper received Mr. Cooper NOE #1 at the Mr. Cooper Address on June 17, 2019. *A copy of the tracking information for Mr. Cooper NOE #1 from the USPS's website (www.usps.com) is attached as **Exhibit 17**.*

56. On or about July 2, 2019, Mr. Cooper sent correspondence to Plaintiffs in response to Mr. Cooper NOE #1 (the "Response to NOE #1"). ***A copy of the Response to NOE #1 without enclosures is attached as Exhibit 18**.*

57. Through Response to NOE #1, Mr. Cooper claimed that no errors occurred in relation to the Loan and further stated that the December 2018 Payment was forwarded to Mr. Cooper "by Cenlar and partially returned due to a stop payment". *See Exhibit 18*.

58. Plaintiffs never issued a stop payment on the December 2018 Payment.

59. Further, through Response to NOE #1, Mr. Cooper reaffirmed that there were $122.64 in late fees and $411.76 in corporate advances by Mr. Cooper due and owing for the July 1, 2019 monthly payment. *See Exhibit 18*.

60. Having not received any response to the Mr. Cooper RFI as of July 12, 2019, Plaintiffs, through counsel, sent correspondence dated July 12, 2019, classified as a notice of error pursuant to 12 C.F.R. § 1024.35, and captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information as required by 12 C.F.R. § 1024.36(d); notice of error pursuant to 12 C.F.R. § 1024.35(b)(6) for failing to respond to a borrower's request for information issued pursuant to 12 C.F.R. § 1024.36 and 12 C.F.R. § 1026.36(c)(3) in a timely manne**r**", to Mr. Cooper at the Mr. Cooper Address via Certified U.S.

Mail, Tracking No. 70142120000306729215 ("Mr. Cooper NOE #2"). *A copy of Mr. Cooper NOE #2 is attached as **Exhibit 19***.

61.     Mr. Cooper received Mr. Cooper NOE #2 at the Mr. Cooper Address on July 17, 2019. *A copy of the tracking information for Mr. Cooper NOE #2 from the USPS's website (www.usps.com) is attached as **Exhibit 20***.

62.     On or about July 23, 2019, Mr. Cooper sent correspondence to Plaintiffs in response to Mr. Cooper NOE #2 (the "Response to NOE #2"). ***A copy of the Response to NOE #2 without enclosures sis attached as Exhibit 21***.

63.     Through Response to NOE #2, Mr. Cooper admitted that they committed an error by failing to respond to the Mr. Cooper RFI and provided the information requested through the Mr. Cooper RFI and further stated: "We apologize we did not provide the owner information in our previous response to you. We also apologize for not providing you a payoff quote". *See Exhibit 21*.

**(Unauthorized transfer of payment from Plaintiffs' bank account)**

64.     On or prior to June 1, 2019, Mr. Cooper attempted to withdraw funds from Plaintiffs' Huntington account in an amount sufficient to constitute two (2) regular periodic payments for the Loan, that is, the amount Mr. Cooper wrongfully claimed to be due and owing due to the manufactured delinquency described *supra*.

65.     Mr. Cooper admitted that Mr. Cooper attempted to withdraw two (2) months' worth of payments for the Loan for the payment due and owing June 2019 in a telephonic conversation with Mrs. McKinley.

66.     Huntington declined the attempted withdrawal of funds from Plaintiffs' Huntington account.

67.     Plaintiffs thereafter set up a recurring payment schedule for payments due and owing under the Loan through Huntington to have them "push" payments to Mr. Cooper as opposed to having Mr. Cooper "pull" payments from Huntington.

68.     On or about June 6, 2019, Mr. McKinley logged into Mr. Cooper's online portal and deleted all bank account information for the Huntington account so as to notify Mr. Cooper of their intent to not make payments through Mr. Cooper's online portal and prevent Mr. Cooper from pulling payments from the Huntington account.

69.     Plaintiffs remitted payment of $1,324.52 in satisfaction of the payment due and owing for July 1, 2019 on June 24, 2019 through their recurring payments from their Huntington account set up through Huntington.

70.     Despite such, on or about July 1, 2019, despite deleting the Huntington account information from Mr. Cooper's online portal Mr. Cooper withdrew a second payment from Plaintiffs' Huntington account in the amount of $1,324.52.

## DAMAGES AND IMPACT ON PLAINTIFFS

71.     To date, Defendants have not corrected their errors in failing to properly account for and apply the December 2018 Payment in accordance with the terms of the Loan and applicable law which has led Mr. Cooper to improperly declare that Plaintiffs are at least one (1) month delinquent on their obligations under the Loan.

72.     Due to Defendants' actions, Plaintiffs has been wrongfully declared to be delinquent in their obligations under the Loan, have been charged unwarranted fees and costs due to this manufactured delinquency, and have subsequently suffered harm to their credit rating.

73.     Defendants' improper actions have further caused Plaintiffs to suffer from other damages including:

a.  Legal fees and expenses to submit requests for information and notices of error to both loanDepot and Mr. Cooper in an attempt to have them act in accordance with the terms of the Loan as well as state and federal law and guidelines;

b.  The Loan has been assessed improper fees and charges due to the manufactured delinquency;

c.  The loss of at least $640.00, the portion of funds from the December 2018 Payment that were not applied to the principal of the Loan;

d.  The loss of use of at least $1,324.52, the funds pulled from Plaintiffs' Huntington account by Mr. Cooper without authorization;

e.  Severe emotional distress driven by this manufactured delinquency and by fear that this manufactured delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless they pay for fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

74.     Throughout this entire ordeal, Plaintiffs have timely fulfilled all of their obligations on the Loan and have simply wanted to be able to enjoy the benefit of the same and

have their payments applied properly without fear of unwarranted fees and allegations of delinquency.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY MR. COOPER**

75.     Mr. Cooper's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Mr. Cooper's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

76.     At the time of the filing of this Complaint, Mr. Cooper has had One Hundred Eighty-Nine (189) consumer complaints lodged against it specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to reverse mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (https://www.consumerfinance.gov/ data-research/consumer-complaints/).

77.     As of the filing of this Complaint, Mr. Cooper has had Six Thousand Seven Hundred Thirty Nine (6,739) consumer complaints lodged against it nationally specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (https://www.consumerfinance.gov/data-research/consumer-complaints/).

78.     As of the filing of this Complaint, Mr. Cooper has had Two Thousand Eighty Nine (2,089) consumer complaints lodged against it specifically concerning the issue identified on the CFPB's consumer complaint database as "trouble during payment process" related to

mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (https://www.consumerfinance.gov/data-research/consumer-complaints/).

79.     Plaintiffs have reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by Mr. Cooper which evidence conduct demonstrating that Mr. Cooper has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The aforementioned consumer complaints are attached as **Exhibit 22** with the date, details, and a narrative disclosed by each consumer set forth in each complaint.*

## COUNT ONE: AGAINST LOANDEPOT AND MR. COOPER
## BREACH OF CONTRACT

80.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten hereon.

81.     The Loan is a contract between Plaintiffs and Defendants. *See Exhibit 1.*

82.     Plaintiffs have remained current on all of their obligations under the Loan at all times relevant to this Complaint.

83.     loanDepot breached the Contract by failing to properly account for the December 2018 Payment or by otherwise properly forwarding such payment to Mr. Cooper.

84.     Mr. Cooper breached the Loan by failing to properly accept and apply the December 2018 Payment, by declaring Plaintiffs to be delinquent on their obligations under the Loan, and by imposing fees and charges against the Loan under the guise of such manufactured delinquency.

85.     Defendants breached the contract in bad faith which is evidenced by each of their failures to correct its breach despite being put on notice of the same through loanDepot NOE #1

and loanDepot NOE #2 (collectively, the "loanDepot NOEs") as well as Mr. Cooper NOE #1 and by Mr. Cooper doubling down on their accounting and the manufactured delinquency through their response to the Experian Dispute. *See Exhibits 8, 10, 13, 16, and 18*.

86.     As pled, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm from Defendants' breach of the Loan as they have wrongfully been declared to be delinquent in their obligations under the Loan, have been charged unwarranted fees and costs due to this manufactured delinquency, and have subsequently suffered harm to their credit rating.

87.     In addition, Defendants' intentional and outrageous conduct has caused Plaintiffs to suffer extreme emotional distress driven by this manufactured delinquency and by fear that this manufactured delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless they pay for fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

88.     Plaintiffs' extreme emotional distress is a foreseeable result of Defendants' breach of the Loan.

89.     As a result of Defendants' actions, Defendants' are each jointly and severally liable to Plaintiffs for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## COUNT TWO: AGAINST LOANDEPOT AND MR. COOPER
## UNJUST ENRICHMENT

90.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 70, in their entirety, as if fully rewritten herein.

91.     Tischler conferred a benefit, the December 2018 Payment, on loanDepot and Mr. Cooper, each of which had knowledge of that benefit. *See Exhibits 4, 5, 6, 10, 13, and 16*.

92.     loanDepot and Mr. Cooper voluntarily accepted and retained the benefit conferred.

93.     Through Response to NOE #1, Mr. Cooper claims to have "partially returned" the December 2018 Payment, but such funds have not been received at any point in time by Plaintiffs and have been wrongfully and unjustly retained by Mr. Cooper and loanDepot. *See Exhibit 18*.

94.     Moreover, Mr. Cooper unjustly retained at least $50.00 of the December 2018 Payment through a payment to themselves for a fee for insufficient funds despite there not being insufficient funds in Plaintiffs' Huntington account at any point in time for the December 2018 Payment. *See Exhibit 4, 5, 6, and 18*.

95.     The circumstances render Defendants' retention of said benefit inequitable as Plaintiffs did not receive the value of the benefit, that is, having the December 2018 Payment applied to the Loan in satisfaction for the payment coming due and owing under the Loan for January 1, 2019.

96.     Defendants have been unjustly enriched at the direct expense of Plaintiffs in the amount of at least $640.00 from the December 2018 Payment. *See Exhibit 4, 5, 6, and 18*

97.     As a result of Defendants' unjust enrichment, Defendants are each jointly and severally liable to Plaintiffs for actual damages as further described, *supra*, including disgorgement of all monies unlawfully accepted by Defendants from Plaintiffs.

**COUNT THREE: AGAINST LOANDEPOT AND MR. COOPER**
**CONVERSION**

98.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

99.     Plaintiffs remitted the December 2018 Payment to loanDepot on or about December 10, 2018. *See Exhibit 4.*

100.    loanDepot forwarded the funds from the December 2018 Payment to Mr. Cooper at some point on or after December 10, 2018. *See Exhibits 5 and 18.*

101.    Through Response to NOE #1, Mr. Cooper claims to have "partially returned" at least $590.00 of the December 2018 Payment, but such funds have not been received at any point in time by Plaintiffs and have been wrongfully retained by Mr. Cooper and loanDepot. *See Exhibit 18.*

102.    Defendants' conversion of Plaintiffs' funds has caused Plaintiffs to suffer the loss of their personal property, specifically at least $590.00 from the December 2018 Payment and the out-of-pocket damage of having to retain counsel to remedy this situation.

103.    Defendants' conversion was made willfully, recklessly, and in conscious disregard of Plaintiffs' rights which is evidenced by each of their failures to correct its breach despite being put on notice of the same through the loanDepot NOEs as well Mr. Cooper NOE #1 and by Mr. Cooper doubling down on their accounting and the manufactured delinquency through their response to the Experian Dispute. *See Exhibits 8, 10, 13, 16, and 18.*

104.    As pled, *supra,* Plaintiffs have been harmed by, and continue to suffer from harm from Defendants' conversion as they have wrongfully been declared to be delinquent in their obligations under the Loan, have been charged unwarranted fees and costs due to this manufactured delinquency, and have subsequently suffered harm to their credit rating.

105.    In addition, Defendants' intentional and outrageous conduct has caused Plaintiffs to suffer extreme emotional distress driven by this manufactured delinquency and by fear that this manufactured delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless they pay for fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

106.    As a result of Defendants' conversions, Defendants are each jointly and severally liable to Plaintiffs for actual damages as further described, *supra*.

107.    Further as Defendants' conversion was undertaken and maintained  willfully, recklessly, and in conscious disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages jointly and severally from each Defendant.

## COUNT FOUR: AGAINST LOANDEPOT
## VIOLATION OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)(1)(E)

**(Failure to send written notice acknowledging receipt of a request for information)**

108.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 70, in their entirety, as if fully rewritten herein.

109.    12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 23

110.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

111.    12 C.F.R. § 1024.36(c) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request."

112.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not...fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

113.    The loanDepot RFI constituted a request for information as defined by 12 C.F.R. § 1024.36. *See Exhibit 9.*

114.    Plaintiffs sent the loanDepot RFI to the loanDepot Address and loanDepot received the loanDepot RFI at such address. *See Exhibits 9 and 11.*

115.    loanDepot failed to send written notice to Plaintiffs acknowledging their receipt of the loanDepot RFI as required by 12 C.F.R. § 1024.36(c) which constitutes a clear and distinct violation of the same.

116.    loanDepot's actions in failing to acknowledge receipt of the loanDepot RFI are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of loanDepot's responsibilities under RESPA.

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 24

117.     As a result of loanDepot's actions, loanDepot is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*, including but not limited to but not limited to costs and fees for the preparation and mailing of loanDepot NOE #2 which would not have been necessary but for loanDepot's failure to properly acknowledge and respond to the loanDepot RFI. 12 U.S.C. § 2605(f)(1). *See Exhibit 13*.

118.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FIVE: AGAINST LOANDEPOT
## VIOLATION OF 12 C.F.R. § 1024.36(d) AND12 U.S.C. §§ 2605(k)(1)(D) AND (E)

### (Failure to send written notice in response to a request for information)

119.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

120.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

121.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

122.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

123. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

124. 12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not...fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

125. The loanDepot RFI constituted a request for information as defined by 12 C.F.R. § 1024.36. *See Exhibit 9.*

126. Plaintiffs sent the loanDepot RFI to the loanDepot Address and loanDepot received the loanDepot RFI at such address. *See Exhibits 9 and 11.*

127. loanDepot failed to send written notice to Plaintiffs in response to the loanDepot RFI as required by 12 C.F.R. § 1024.36(d) which constitutes a clear and distinct violation of the same.

128.     loanDepot's actions in failing to send a written response to the loanDepot RFI are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of loanDepot's responsibilities under RESPA.

129.     As a result of loanDepot's actions, loanDepot is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*, including but not limited to but not limited to costs and fees for the preparation and mailing of loanDepot NOE #2 which would not have been necessary but for loanDepot's failure to properly acknowledge and respond to the loanDepot RFI. 12 U.S.C. § 2605(f)(1). *See Exhibit 13*.

130.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT SIX: AGAINST LOANDEPOT**
**VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(k)(1)(C) AND (E)**

**(Failure to send written notice acknowledging receipt of a notice of error)**

131.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

132.     12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

133.     12 U.S.C. § 2605(k)(1)(C) provides that a servicer of a federally related mortgage shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

134.    12 U.S.C. § 2605(k)(1)(E) provides that a servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

135.    loanDepot NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See Exhibit 10.*

136.    Plaintiffs sent loanDepot NOE #1 to the loanDepot Address and loanDepot received loanDepot NOE #1 at such address. *See Exhibits 10 and 12.*

137.    loanDepot failed to send written notice acknowledging receipt of loanDepot NOE #1 in a timely manner as required by 12 C.F.R. § 1024.35(d) which constitutes a clear and distinct violation of the same.

138.    loanDepot's actions in failing to acknowledge loanDepot NOE #1 are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of loanDepot's responsibilities under RESPA.

139.    As a result of loanDepot's actions, loanDepot is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*, including but not limited to but not limited to costs and fees for the preparation and mailing of loanDepot NOE #2 which would not have been necessary but for loanDepot's failure to properly acknowledge and respond to loanDepot NOE #1. 12 U.S.C. § 2605(f)(1). *See Exhibit 13*.

140. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT SEVEN: AGAINST LOANDEPOT
## VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(k)(1)(C) AND (E)

### (Failure to send written notice in response to a notice of error)

141. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

142. 12 C.F.R. § 1024.35(e)(3) provides, in relevant part:

> (i) *In general.* A servicer must comply with the requirements of paragraph (e)(1) of this section:
> (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
> […]
> (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.
> (ii) *Extension of time limit.* For asserted errors governed by the time limit set forth in paragraph (e)(3)(i)(C) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) [emphasis added] if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing. A servicer may not extend the time period for responding to errors asserted under paragraph (b)(6), (9), or (10) of this section.

143. 12 U.S.C. § 2605(k)(1)(D) provides that a servicer of a federally related mortgage shall not "Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan."

144.    12 U.S.C. § 2605(k)(1)(E) provides that a servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

145.    loanDepot NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See Exhibit 10.*

146.    Plaintiffs sent loanDepot NOE #1 to the loanDepot Address and loanDepot received loanDepot NOE #1 at such address. *See Exhibits 10 and 12.*

147.    loanDepot failed to send a written response to loanDepot NOE #1 in a timely manner as required by 12 C.F.R. § 1024.35(e) which constitutes a clear and distinct violation of the same.

148.    loanDepot's actions in failing to send a written response to loanDepot NOE #1 are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of loanDepot's responsibilities under RESPA.

149.    As a result of loanDepot's actions, loanDepot is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*, including but not limited to but not limited to costs and fees for the preparation and mailing of loanDepot NOE #2 which would not have been necessary but for loanDepot's failure to properly acknowledge and respond to loanDepot NOE #1. 12 U.S.C. § 2605(f)(1). *See Exhibit 13*.

150.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT EIGHT: AGAINST MR. COOPER**
**VIOLATION OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. §§ 2605(k)(1)(D) AND (E)**

**(Failure to send written notice in response to a request for information)**

151.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

152.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

153.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

154.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
> (i)  Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

155.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan[.]

156. 12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not...fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

157. The Mr. Cooper RFI constituted a request for information as defined by 12 C.F.R. § 1024.36. *See Exhibit 14.*

158. Through the Mr. Cooper RFI, Plaintiffs requested the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan." *See Exhibit 14*.

159. Plaintiffs sent the Mr. Cooper RFI to the Mr. Cooper Address and Mr. Cooper received the Mr. Cooper RFI at such address. *See Exhibits 14 and 15*.

160. Mr. Cooper failed to send written notice to Plaintiffs in response to the Mr. Cooper RFI as required by 12 C.F.R. § 1024.36(d) which constitutes a clear and distinct violation of the same.

161. Through Response to NOE #2, Mr. Cooper admitted that they committed an error by failing to respond to the Mr. Cooper RFI and provided the information requested through the Mr. Cooper RFI and further stated: "We apologize we did not provide the owner information in our previous response to you. We also apologize for not providing you a payoff quote". *See Exhibit 21*.

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 32

162.     Mr. Cooper's actions in failing to send a written response to the Mr. Cooper RFI are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of Mr. Cooper's responsibilities under RESPA.

163.     As a result of Mr. Cooper's actions, Mr. Cooper is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*, including but not limited to but not limited to costs and fees for the preparation and mailing of Mr. Cooper NOE #2 which would not have been necessary but for Mr. Cooper's failure to properly respond to the Mr. Cooper RFI. 12 U.S.C. § 2605(f)(1). *See Exhibit 19*.

164.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT NINE: AGAINST MR. COOPER
## VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(k)(1)(C) AND (E)

**(Failure to perform a reasonable investigation into the errors asserted by a notice of error)**

165.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

166.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

167.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

168.    12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

> (B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

169.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

170.    12 U.S.C. § 2605(k)(1)(E) provides that a servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

171.    Mr. Cooper NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 16.*

172.    Plaintiffs sent Mr. Cooper NOE #1 to U.S. Bank at the Mr. Cooper Address and Mr. Cooper received Mr. Cooper NOE #1 at the Mr. Cooper Address. *See Exhibits 16 and 17.*

173.     Through Mr. Cooper NOE #1, Plaintiffs alleged that Mr. Cooper committed errors in their servicing of the Loan pursuant to 12 C.F.R. §§ 1024.35(b)(2), (5), and (11) for failing to properly accept and apply the December 2018 Payment to the Loan, for imposing improper fees against the Loan, and by generally claiming the Loan to be delinquent. *See Exhibit 16*.

174.     Mr. Cooper, through Response to NOE #1, stated that no error occurred in the servicing of the Loan and further stated that the December 2018 Payment was forwarded to Mr. Cooper "by Cenlar and partially returned due to a stop payment". *See Exhibit 18*.

175.     Plaintiffs never issued a stop payment on the December 2018 Payment.

176.     Any reasonable investigation into Mr. Cooper NOE #1 would have required communication with loanDepot and would have uncovered, among other things, that:

    a.   At no point in time did Plaintiffs issue a stop payment on the December 2018 Payment;

    b.   That no funds from the December 2018 Payment were returned to Plaintiffs;

    c.   That either loanDepot or Mr. Cooper was in possession of all funds from the December 2018 Payment;

    d.   That Plaintiffs' delinquency with respect to the Loan was solely the result of errors by loanDepot and Mr. Cooper; and,

    e.   There was no reasonable basis for Mr. Cooper to impose any delinquency related fees against the Loan.

177.     Mr. Cooper did not perform a reasonable investigation into the errors alleged through Mr. Cooper NOE #1 related to the December 2018 Payment, the subsequent alleged delinquency, and the improper imposition of fees pursuant to the manufactured delinquency.

178.    Mr. Cooper, in issuing Response to NOE #1, failed to fulfill the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(A) or 12 C.F.R. § 1024.35(e)(1)(i)(B).

179.    Mr. Cooper failed to comply with 12 U.S.C. § 2605(k)(1)(C) in failing to take timely action to respond to properly respond to Plaintiffs regarding mortgage loan problems, which is a standard servicer duty.

180.    Mr. Cooper failed to comply with 12 U.S.C. § 2605(k)(1)(E) in neglecting its obligations pursuant to 12 C.F.R. § 1024.35(e).

181.    Mr. Cooper's failure to properly respond to Mr. Cooper NOE #1, by failing to perform a reasonable investigation into the errors alleged through Mr. Cooper NOE #1, constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

182.    Mr. Cooper's actions in failing to properly investigate and respond to Mr. Cooper NOE #1 are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of Mr. Cooper's responsibilities under RESPA.

183.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

184.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT TEN: AGAINST MR. COOPER
### VIOLATIONS OF 15 U.S.C. §§ 1681, *et seq.*

**(Failure to furnish correct information regarding the Loan to Credit Reporting Agencies)**

185.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

186.    Based on the allegations contained above, *supra*, and Exhibit 23, Mr. Cooper knowingly began furnishing incorrect information pursuant to 15 U.S.C. § 1681s-2(a)(1)(A) regarding Plaintiffs' mortgage loan as of December 2018 and continuing until this day on that Mr. Cooper is furnishing information to the credit reports that:

       a.    Continues to report incorrect information for January 2019 by failing to report a timely payment; *see Exhibit 23* at p. 3

       b.    Continues to report incorrect information for March 2019 that notes the March 2019 payment is 30 days late when based on the allegations above, *supra*, all contractual payments tendered to Mr. Cooper were current; *Id.* and

       c.    By continuing to report incorrect information as to the March 2019 payment as 30 days late triggered Trans Union to update the account status as "30 days past due" which is materially misleading to Plaintiff Jon McKinley, Mr. Cooper, TransUnion, and any party who views Mr. McKinley's credit file.

187.    This materially misleading information still being furnished by Mr. Cooper continues to curtail Mr. McKinley's ability to have an accurate credit score.

188.    Based on the allegations above, *supra*, Mr. Cooper continued to furnish inconsistent information despite the receipt of a Notice of Dispute from TransUnion in violation of 11 U.S.C. § 1681s-2(a)(1)(B) as demonstrated by Exhibit 23

189.    The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 37

190.     As a result of each and every willful violation of the FCRA committed by Mr. Cooper with respect to the Mr. Cooper tradelines, Plaintiff Jon McKinley is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Mr. McKinley as applicable.

## COUNT ELEVEN: AGAINST MR. COOPER
## VIOLATION OF THE EFTA, 15 U.S.C. § 1693, *et seq.*

### (Unauthorized electronic transfer of funds from Plaintiffs' bank account)

191.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

192.     "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." 15 U.S.C. § 1693e.

193.     Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. 12 C.F.R. § 1004.10(b).

194.     A consumer may stop payment of a preauthorized electronic fund transfer from the consumer's account by notifying the financial institution orally or in writing at least three business days before the scheduled date of the transfer. 12 C.F.R. § 1004.10(c)(1).

195.     On or about June 6, 2019, Plaintiffs deleted all bank account information for the Huntington account from Mr. Cooper's online portal so as to notify Mr. Cooper of their intent to

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 38

not make payments through Mr. Cooper's online portal and prevent Mr. Cooper from pulling payments from the Huntington account.

196.    Despite such, on or about July 1, 2019, despite deleting the Huntington account information from Mr. Cooper's online portal Mr. Cooper withdrew a second payment from Plaintiffs' Huntington account in the amount of $1,324.52.

197.    Mr. Cooper's actions in making an unauthorized electronic transfer of funds from Plaintiffs' Huntington account as described, *supra*, constitutes a clear violation of 15 U.S.C. § 1693h.

198.    As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, as further described, *supra*, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1693m.

## COUNT TWELVE: AGAINST MR. COOPER
## CONVERSION

199.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 79, in their entirety, as if fully rewritten herein.

200.    POn or about June 6, 2019, Plaintiffs deleted all bank account information for the Huntington account from Mr. Cooper's online portal so as to notify Mr. Cooper of their intent to not make payments through Mr. Cooper's online portal and prevent Mr. Cooper from pulling payments from the Huntington account.

201.    Despite such, on or about July 1, 2019, despite deleting the Huntington account information from Mr. Cooper's online portal Mr. Cooper withdrew a second payment from Plaintiffs' Huntington account in the amount of $1,324.52.

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 39

202.    Mr. Cooper has retained these funds obtained through unauthorized means and has since prevented Plaintiffs from the use of such funds.

203.    Mr. Cooper's conversion of Plaintiffs' funds has caused Plaintiffs to suffer the loss of their personal property, specifically $1,324.52 and the out-of-pocket damage of having to retain counsel to remedy this situation.

204.    Mr. Cooper's conversion was made willfully, recklessly, and in conscious disregard of Plaintiffs' rights which is evidenced by their violation of the EFTA as further described, *supra*.

205.    As pled, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm from Mr. Cooper's conversion as they have lost the use of and access to the converted funds.

206.    In addition, Mr. Cooper's intentional and outrageous conduct has caused Plaintiffs to suffer extreme emotional distress driven by the exacerbation of the effects of the manufactured delinquency and by fear that this manufactured delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless they pay for fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

207.    As a result of Mr. Cooper's conversion, Mr. Cooper is liable to Plaintiffs for actual damages as further described, *supra*.

208.    Further as Mr. Cooper's conversion was undertaken and maintained willfully, recklessly, and in conscious disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages from Mr. Cooper.

*Jon McKinley,* et al. *v. loanDepot.com, LLC, etc.,* et al.

Complaint: Page 40

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Jon McKinley and Nicole McKinley prays that this Court grant judgment against Defendants loandepot.com, LLC d.b.a. loanDepot and Nationstar Mortgage LLC d.b.a. Mr. Cooper, and award him the following:

A. Actual damages from Defendants loandepot.com, LLC d.b.a. loanDepot and Nationstar Mortgage LLC d.b.a. Mr. Cooper, jointly and severally, in an amount to be determined at trial for the allegations contained in Counts One through Three;

B. Punitive damages from Defendants loandepot.com, LLC d.b.a. loanDepot and Nationstar Mortgage LLC d.b.a. Mr. Cooper as to Count Three;

C. Actual damages from Defendant loandepot.com, LLC d.b.a. loanDepot in an amount to be determined at trial for the allegations contained in Counts Four through Seven;

D. Statutory damages from Defendant loandepot.com, LLC d.b.a. loanDepot in the amount of Two Thousand Dollars ($2,000.00) for each and every violation of RESPA contained in Counts Four through Seven;

E. Actual damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper in an amount to be determined at trial for the allegations contained in Counts Eight, Nine, Eleven, and Twelve;

F. Actual damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper in an amount to be determined at trial as to Plaintiff Jon McKinley for the allegations contained in Count Ten;

G.  Statutory damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper in the amount of Two Thousand Dollars ($2,000.00) for each and every violation of RESPA contained in Counts Eight and Nine;

H.  Statutory damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper for violation(s) of the FCRA as to Plaintiff Jon McKinley as alleged in Count Ten;

I.  Punitive damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper for violation(s) of the FCRA as to Plaintiff Jon McKinley as alleged in Count Ten;

J.  Statutory damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper in the amount of One Thousand Dollars ($1,000.00) for each and every violation of the EFTA contained in Count Eleven;

K.  Punitive damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper as to the allegations contained in Count Twelve;

L.  Plaintiffs' reasonable attorneys' fees and costs from Defendants loandepot.com, LLC d.b.a. loanDepot and Nationstar Mortgage LLC d.b.a. Mr. Cooper as to Counts One through Three;

M.  Plaintiffs' reasonable attorneys' fees and costs from Defendant loandepot.com, LLC d.b.a. loanDepot as to Counts Four through Seven;

N.  Plaintiffs' reasonable attorneys' fees and costs from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper as to Counts Eight through Twelve; and

O.  Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/Marc E. Dann, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Jon and Nicole McKinley*

## JURY DEMAND

Plaintiffs Jon McKinley and Nicole McKinley hereby respectfully demand a trial by jury on all such claims that may be so tried.

/s/Marc E. Dann, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Jon and Nicole McKinley*